United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Ray'Quan Harding, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-23775-Civ-Scola |
| | ) | |
| Transunion LLC and others, | ) | |
| Defendants. | ) | |

### Order Granting Motion to Dismiss and Motion for Judgment on the Pleadings

Plaintiff Ray'Quan Harding, proceeding pro se, seeks to recover damages under the Fair Credit Reporting Act from Defendants Transunion LLC, Experian Information Solutions, and Upstart Network, Inc., for alleged inaccuracies in his account and credit reports stemming from a loan Harding received from Upstart. (4th Am. Compl., ECF No. 51; Upstart's Mot. to Dismiss, ECF No. 67.)[1] Harding also claims Upstart breached its contract with him. (4th Am Compl. ¶¶ 104–108.) In response, Upstart has filed a motion to dismiss and Transunion and Experian (the "Reporting Agencies"), after answering the complaint, have filed a joint motion for judgment on the pleadings. (Upstart's Mot. at 1–11; Jt. Mot. for J. on the Pleadings, ECF No. 75). Both motions point out that Harding has previously litigated issues relating to the same account through an arbitration proceeding, against Upstart, with the American Arbitration Association. (Upstart's Mot. at 6–9; Jt. Mot. at 5–12.) That proceeding, which Harding doesn't mention in his complaint, resulted in an award against Harding and in favor of Upstart. (Arb. Award, ECF No. 67-5.) Additionally, the Reporting Agencies also argue that the alleged inaccuracies that Harding complains of are not, in any event, actionable under the FCRA. (Jt. Mot. at 12–14.) Harding has responded in opposition to both motions. (Pl.'s Resp. to Upstart's Mot, ECF No. 68; Pl.'s Resp. to Jt. Mot., ECF No. 79). The Reporting Agencies have jointly replied, in support of their motion for judgment on the pleadings (Jt. Reply, ECF No. 85) but Upstart did not reply in support of its motion and the time to do so has passed. After review, the Court agrees with the Defendants that Harding's case should be dismissed and **grants** their motions for the reasons that follow (**ECF Nos. 67, 75**). The Court also **denies** Harding's motion for leave to file a fifth amended complaint (**ECF No. 82**).

---

[1] Although Harding provides no information about the nature of his Upstart account in his complaint, he does not dispute that he obtained a loan from Upstart for $5,000 in January 2021. (Upstart's Mot. at 3.)

### 1. Background
### A. The Arbitration Proceeding[2]

Although there is no mention of it in his complaint, Harding does not dispute, in briefing, that, in August 2022, he filed a demand for arbitration against Upstart with the American Arbitration Association, as required by the terms of his loan agreement with Upstart. (Upstart's Mot. at 1; Pl.'s Resp. to Upstart at 2.) In his arbitration complaint, Harding acknowledged that, in January 2021, he obtained a personal unsecured loan from Upstart for $5,000. (Pl.'s Arb. Compl. ¶¶ 11, 12.) In that complaint, Harding also admitted a late payment in April or May 2022, blaming it on his bank's having disabled his automatic payments to Upstart because of "some technical issues." (*Id.* ¶¶ 13–19.) In broad strokes, the gravamen of Harding's arbitration complaint rested on his claims that Upstart reported "inaccurate and incomplete credit information to all three [consumer reporting agencies]." (*Id.* ¶ 37.) After an evidentiary hearing, the arbitrator issued a written award, finding against Harding on all his claims and in favor of Upstart. (Arb. Award at 1–2.) In that written award, the arbitrator concluded that Harding failed to "provide any evidence or any allegations of fraud or other items that may have been inconsistent with [Upstart's] records." (Arb. Award at 2.) That award has since been confirmed by the Court, over Harding's untimely motion to vacate. *Upstart Network, Inc. v. Harding*, Case No. 1:23-cv-24579-PCH (the "Confirmation Action"), Order, ECF No. 8 (S.D. Fla. January 12, 2024) (Huck, J.).

### B. Harding's Complaint[3]

Apart from the arbitration, Harding sent the Reporting Agencies, via certified mail, what he describes as "disputes regarding the completeness and accuracy of the Upstart . . . account" as described in his consumer reports. (4th Am. Compl. ¶ 19.) Each time, the Reporting Agencies forwarded Harding's indirect disputes to Upstart. (*Id.*) Thereafter, the Reporting Agencies would claim to have investigated Harding's disputes, advising him that "the furnisher/

---

[2] The Court agrees with the Defendants that it can and should take judicial notice of the record documents from both the arbitration proceeding as well as this Court's confirmation of the arbitration award. *See United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *see also Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) ("When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). And, importantly, Harding does not object to the Court's noticing those documents.

[3] This background is based on the allegations in the complaint. For purposes of evaluating the Defendants' motions, the Court accepts the complaint's *factual* allegations as true and construes those allegations in the light most favorable to Harding.

creditor verified the account as accurate." (*Id.* ¶ 20 (cleaned up).) The Reporting Agencies did not make any changes to the entries related to the Upstart account. (*Id.*) Harding also called both Experian and Transunion, in May 2023, and asked a "dispute agent" at each company what investigations were undertaken as a result of his "many disputes." (*Id.* ¶¶ 49, 50.) Both agents told Harding that "dispute agents do not conduct any actual dispute investigations but rather forward these disputes to the furnishers for their sole discretion." (*Id.* ¶¶49, 50.) The Upstart account was not deleted and remained on Harding's credit file, with his consumer report's being disseminated multiple times. (*Id.* ¶¶ 51, 55.) Harding says this negatively impacted his creditworthiness and resulted in multiple loan and credit-card application denials. (*Id.* ¶¶ 52, 54, 55.)

Harding groups the allegedly inaccurate information he complains about into seven different categories.

The first two categories are related. They include what Harding calls the "Date of First Delinquency" and the "Fall Off Date." (*Id.* ¶¶ 25–31.) Harding says that, contrary to the requirements of the FCRA, none of the Defendants specified a "Date of First Delinquency" in any of their reports. (*Id.* ¶¶ 25, 30.) The Defendants did report, however, a "Fall Off Date," presumably for Harding's Upstart account, which the Court infers to be the date the reports project that the delinquent account will no longer be published. (*Id.* ¶25.) The "[e]stimated month and year that [the] item will be removed" reported by Transunion was July 2029—a date that Transunion hedges is "not for certain." (*Id.* ¶ 26.) Experian, on the other hand, reported that the delinquency would be "On Record Until" April 2029 (as opposed to July 2029). (*Id.* ¶¶ 28, 29.) Associated with these categories of alleged inaccuracies, Harding also references a "payment history chart" that he says shows he "was on-time" in April and July 2022 and that his Date of First Delinquency did not occur until August 2022. (*Id.* ¶¶ 27, 29.) Part of Harding's grievance in this case stems from the two Reporting Agencies' chronicling two different "fall off dates": April versus July 2029. (*Id.* ¶ 30.)

The third category Harding complains of includes what he describes as "missing notice[s] of dispute" or "compliance condition code[s]." (*Id.* ¶ 32.) The Defendants did not report either a notice of dispute or a compliance condition code, leaving what Harding describes as a "critical data field" incomplete. (*Id.*)

Harding's fourth category of challenges is comprised of various discrepancies he discerns relating to Experian's reports of certain payments, or non-payments, in what Harding refers to as "the payment history chart" and "the balance histories." (*Id.* ¶¶ 39–44.) For example, Experian reported on-time payments for the months of April and May 2022 in the payment history chart; but, at the same time, reported that Harding "made $0 payments" for those same

months in the balance histories. (*Id.* ¶¶ 39, 40.) Further complicating matters, according to Upstart's records, Harding made payments, presumably in April and May 2022, of $184. (*Id.* ¶ 40.) For June 2022, Experian reported in the payment history chart that Harding did not make any payments but, in contrast, reported a payment of $552 on June 6, 2022. (*Id.* ¶¶ 41, 42.) And, finally, for July 2022, Experian reported an on-time payment in the payment history chart while at the same time reporting "a payment of $0" in the balance histories. (*Id.* ¶¶ 43, 44.)

In his fifth category of alleged errors, Harding zeroes in on dates that Experian and Transunion indicated his report or status had been updated—ranging from January 2023 to July 2023 for Experian and December 21, 2022, for Transunion—compared to when he sent his latest dispute—December 28, 2023. (*Id.* ¶¶ 45–47.) Harding also points out that Transunion itself said it reported the results of an investigation as recently as January 26, 2024—and yet still indicated that the last date the report was updated was December 21, 2022. (*Id.* ¶ 46, 47.)

The sixth category relates to the Defendants' collective reporting of Harding's payment history. (*Id.* ¶ 35.) The Defendants are reporting that Harding was 60 days late for three consecutive months, in September, October, and November 2022. (*Id.*) The Defendants also show that the date of Harding's last payment was June 6, 2022, but at the same time indicate he was "on time in the payment history chart for the month of July 2022 instead of 30 days late." (*Id.*)

Finally, Harding's seventh category, involves his allegation that Upstart failed to report the results of an investigation conducted by a third consumer reporting agency, Equifax. (*Id.* ¶¶ 36–38.) Equifax deleted the Upstart tradeline from Harding's credit file, after its investigation, apparently notifying Upstart that it did so. (*Id.* ¶ 37.) According to Harding, Upstart did not notify Experian and Transunion of the results of Equifax's investigation. (*Id.* ¶ 38.)

As a result of all these issues, Harding complains, generally, that "[o]n several occasions over the past year and a half, the Defendants have failed to appropriately modify or delete inaccurate and misleading information . . . in Plaintiff's credit file after several phone disputes, written disputes, and complaints filed with the Consumer Financial Protection Bureau." (*Id.* ¶ 17.) And, he maintains, because the Reporting Agencies did not delete the Upstart account or delinquency from his credit reports, he was damaged in several ways, including credit application denials, lost business opportunities, reputational harm, emotional turmoil, mental stress, embarrassment, anxiety, humiliation, and feelings of hopelessness. (*Id.* ¶ 51.) Springing from these damages, Harding lodges fourteen counts (counts one through fourteen) under the FCRA against

Transunion, Experian, and Upstart (five against each of the Reporting Agencies and four against Upstart). (*Id.* at 11–19.)

Apart from his FCRA claims, Harding also lodges one breach-of-contract count against Upstart (count fifteen). This claim stems from Upstart's allegedly locking Harding out of his online account after he mailed Upstart a dispute about its credit reporting. (*Id.* ¶¶ 104–108.) Because Harding was locked out of the account, he says he was prevented "from making his usual automatic payments to Upstart." (*Id.* ¶ 105.) In the contract, presumably between Upstart and Harding, Harding says there is no provision that allows Upstart to "lock or restrict [Harding's] access to his account" "during a dispute between the parties." (*Id.* ¶ 107.) According to Harding, Upstart locked him out of his account in retaliation for his disputing Upstart's credit reporting. (*Id.* ¶ 106.) And, he maintains, "had Upstart not locked the account, [he] would have continued to make payments . . . and the account would not have been charged off." (*Id.* ¶ 108.)

## 2. Legal Standards

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

And, as set forth in Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). A court ruling on a 12(c) motion must "accept all the facts in the [pleadings] as true and view them in the light most favorable to the nonmoving party." *Id.* A motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss pursuant to Rule 12(b)(6), as described above. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Finally, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (cleaned up). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (cleaned up).

### 3. Analysis

As a starting point, the three remaining Defendants all argue that Harding's claims that the Upstart account delinquencies are inaccurate have been fully litigated through the arbitration proceeding described above.[4] Harding disagrees. He argues, in opposition, that the grounds supporting his complaint are not the same as the grounds that were litigated through the arbitration proceeding. In support, Harding points out that, after the August 2022 commencement of the arbitration proceeding, he "has disputed the Upstart account with the Defendants on numerous occasions . . . entitling [him] to a new cause of action . . . on each separate dispute." (Pl.'s Resp. to Upstart's Mot. at 2; *see also* Pl.'s Resp. to Jt. Mot. at 9 (arguing that he has submitted three disputes to the Reporting Agencies since commencing the arbitration, each one of which "would need to be judged on the merits independently").) Further, Harding says,

---

[4] Defendants are generally permitted to raise claim- and issue-preclusion defenses in a motion to dismiss when, as here, their applicability is apparent from the face of a complaint and other documents that a court may consider. *See Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 402 (11th Cir. 2020) (recognizing the propriety of defendants' raising the defense of res judicata through their motions to dismiss where "its applicability was apparent from the face of the . . . complaint and the documents the district court was allowed to consider"); *see also Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel').").

neither Reporting Agency was a party to the arbitration proceeding, "nor could they have been," and so, even if his claims against Upstart are barred, his claims against the Reporting Agencies have never been litigated and so would survive. (Pl.'s Resp. to Jt. Mot. at 8.) For the most part, the Court is not persuaded by Harding's position and agrees with the Defendants: at the core of both this case as well as the arbitration proceeding is Harding's allegation that the Upstart delinquencies are inaccurate—whether reported by Upstart or the Reporting Agencies. Accordingly, the Court finds Harding's complaint largely barred by issue preclusion as to the Reporting Agencies and barred entirely by claim preclusion as to Upstart.[5]

Secondarily, the Reporting Agencies also seek judgment on the pleadings to the extent some of Harding's claims arise from alleged reporting errors independent of the underlying Upstart account report. (Jt. Mot. at 12–14.) They maintain that the purported report errors that Harding points to in his complaint do not trigger FCRA liability. Harding largely ignores this argument. After review, the Court agrees with the Reporting Agencies that Harding's allegations of errors are not, in any event, viable under the FCRA and grants their motion on that basis as well.

### A. Claim preclusion bars Harding's claims against Upstart.

The Court begins its analysis with the application of claim preclusion to Harding's claims against Upstart. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). "A subsequent suit is barred under the doctrine of claim preclusion when the following four elements are

---

[5] Without explanation, the Defendants all seem to assume that Florida state law would govern the applicable preclusion principles in this case. The Court can find no support for this supposition, however, especially here, where the arbitration proceeding addressed federal questions, involved no state-law claims, and was, most importantly, confirmed by a federal court. *See* Confirmation Action, Order at 2. Accordingly, to the extent there are any differences, the Court applies federal, and not state-law, preclusion principles in this case. *Cf. CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003) ("Given that the matter before us is a federal question previously decided by a federal court, it naturally follows that federal preclusion principles apply in this case."); *Andreu v. HP Inc.*, 272 F. Supp. 3d 1329, 1332 (S.D. Fla. 2017) (Moreno, J.) ("[F]ederal preclusion principles apply to prior federal decisions based on federal question jurisdiction.") Regardless, the error likely has no impact on this case since "[a] comparison between Florida rules and federal rules governing claim and issue preclusion reveals that the relevant principles are largely identical." *SFM Holdings, Ltd. v. Banc of Am. Securities, LLC*, 764 F.3d 1327, 1337 (11th Cir. 2014) (noting that one of the few differences is that, under Florida law, there are certain "equitable exceptions"—none of which are raised here—"that militate against preclusion where the 'ends of justice' or 'manifest injustice' so require").

present: (1) there is a final judgment on the merits, (2) the decision was rendered by a court of competent jurisdiction; (3) the same cause of action is involved in both cases; and (4) the parties, or those in privity with them, are identical in both suits." *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1246 (11th Cir. 2014). "If a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* at 1247 (cleaned up). This means that claim preclusion "applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact which *could have been raised* in the prior case." *Id.* (cleaned up) (emphasis added).

Harding's FCRA claims against Upstart are clearly precluded as all four elements are established. Harding does not really dispute elements (1), (2), and (4), as recited above: there was a final judgment on the merits, a decision rendered by a court of competent jurisdiction, and an identity of the parties—Harding and Upstart—in both suits. In sum, this Court—a court of competent jurisdiction—confirmed a final valid and binding arbitration award issued on the merits, arising out of Harding's disputes about his account with Upstart. *See* Confirmation Action, Order at 5 ("The Award . . . is hereby confirmed, recognized, and enforced.") (cleaned up); *see also Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985) ("When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated."). Instead, Harding's sole quarrel seems to center on the third element: whether "the same cause of action is involved in both cases."

Harding insists that his complaint in this case represents an entirely new action, wholly separate and apart from the disputes he previously litigated against Upstart through the arbitration and the Confirmation Action. In support, he points to four instances in which he disputed the reporting of his Upstart delinquencies by the Defendants *after*—he emphasizes—the commencement of his arbitration proceedings. (Pl.'s Resp. to Upstart's Mot. at 2.) Accordingly, Harding reasons, those disputes could not possibly have been litigated through the arbitration proceeding. Harding's position, however, misapprehends the application of preclusion principles to his claims.

The four post-arbitration disputes Harding identifies, along with the claims in this case, target the very same account and the very same alleged inaccuracies that were fully addressed by the arbitration award and its ensuing confirmation. Preclusion prevents Harding from manufacturing new claims out

of his continued disagreement with the way Upstart reports his delinquencies—the arbitrator concluded, and this Court confirmed, that Harding failed to provide any evidence to support his claim that Upstart misreported his payment (or non-payment) history. This fact—that Harding has already litigated his challenge to the information Upstart reports—differentiates his case from the several cases he cites to. *See, e.g., Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970, 973 (7th Cir. 2019) (finding preclusion of FCRA claims inapplicable where, "[i]n his first suit [the plaintiff] complained about a *different letter* that [a debt collector] had sent, attempting to collect a *different debt* to a *different creditor*") (emphasis added); *see also West v. Wells Fargo Bank, N.A.*, No. 116CV00393WSDAJB, 2017 WL 9474220, at *5 (N.D. Ga. Jan. 4, 2017), *rep. & rec. adopted*, No. 1:16-CV-393-WSD, 2017 WL 382615 (N.D. Ga. Jan. 27, 2017) (noting that the defendant's conduct pre-dating the filing of a previous suit would be precluded whereas *allegedly wrongful conduct post-dating that suit* could proceed) (emphasis added); *Escobar v. Pennsylvania Higher Educ. Assistance Agency Services, LLC*, No. CV 17-4212, 2018 WL 1740364, at *5 (E.D. Pa. Apr. 11, 2018) (finding a time bar inapplicable where the plaintiff continued to dispute years-old *inaccurate* information because each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations) (emphasis added); *see also Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014) ("[E]ach re-report of *inaccurate or false information* by a credit rating agency constitutes a distinct tort.") (cleaned up) (emphasis added); *Eiland v. Westlake Services, LLC*, No. CV H-23-1272, 2023 WL 4139014, at *3 (S.D. Tex. June 22, 2023) (similar); *Broccuto v. Experian Info. Sols., Inc.*, No. CIV.A. 3:07CV782HEH, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008) (similar).

Harding's breach-of-contract claim meets a similar fate, though for a slightly different reason. Although Harding did not raise a breach-of-contract claim through the arbitration proceeding, that claim is nonetheless also precluded because he *could have* raised it. Here, Harding lodges his breach-of-contract claim against Upstart for allegedly "prevent[ing] [him] from making his usual automatic payments." (4th Am. Compl. ¶ 105.) In the arbitration proceeding, Harding challenged the very same conduct, through a Fair Credit Billing Act claim, complaining that Upstart blocked his access to his account and prevented him from making any payments. (Arb. Compl. at 3 ¶¶ 26, 27, 29, at 4 ¶ 31, at 9 ¶ 45(B), at 10 ¶ 48(B), ECF No. 67-3.) That is, Harding's claim here—that Upstart improperly prevented him from continuing to make payments on his account, in breach of their agreement—arises out of the same nucleus of operative facts and could have been raised in the prior proceeding. *See Baloco*, 767 F.3d at 1247 (finding that claim preclusion "applies not only to the precise

legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact which could have been raised in the prior case") (cleaned up). In sum, then, all of Harding's claims against Upstart are barred by claim preclusion.

**B. Issue preclusion bars Harding's claims against the Reporting Agencies to the extent those claims rely on inaccuracies in the underlying Upstart account itself.**

The Reporting Agencies, although not parties to the arbitration, argue issue preclusion nonetheless bars Harding's claims against them. Issue preclusion, in contrast to claim preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (cleaned up). Issue preclusion thus apply only where "(1) the issue at stake [is] identical to the one involved in the prior litigation; (2) the issue [was] actually litigated in the prior suit; (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted . . . had a full and fair opportunity to litigate the issue in the earlier proceeding." *CSX Transp.*, 327 F.3d at 1317. Notably, "[t]he federal standard for collateral estoppel does not require mutuality of parties." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1333 (11th Cir. 2003); *see also Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986) ("Collateral estoppel, unlike res judicata, is not limited to parties and their privies. A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff.").

To the extent Harding's claims rest upon his continuing quarrel with the reporting of his Upstart delinquencies, the Court agrees with the Reporting Agencies: (1) the issues at stake here—the alleged Upstart-account inaccuracies—are identical to the issues litigated through the arbitration; (2) the alleged inaccuracies were actually litigated through the confirmed arbitration; (3) those alleged inaccuracies were a critical and necessary part of the judgment in the confirmed arbitration; and (4) Harding had a full and fair opportunity to litigate the alleged inaccuracies through the confirmed arbitration. As the Reporting Agencies note, Harding does not address these elements head on except to continue focusing on his insistence that Upstart is inaccurately reporting his account delinquencies and that he has lodged multiple disputes in that regard that postdate the arbitration. But that argument again misses the mark—just as it did in response to Upstart's claim-preclusion arguments.

The Court agrees with the Reporting Agencies: no matter how many times Harding disputes the reporting of the same Upstart account, an arbitrator has already concluded, and this Court has confirmed, that his claims of inaccuracies lack merit. (Jt. Reply at 3.) Whether lodged against Upstart or the Reporting Agencies, Harding's FCRA claims all hinge on identifying a reported inaccuracy. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (recognizing that, whether lodged under § 1681e or § 1681i, an FCRA plaintiff "must show that [a] report contained factually inaccurate information"). Accordingly, in order to have been successful as to his claims against Upstart, through the arbitration proceeding, Harding would have had to have shown that Upstart inaccurately reported his delinquencies. He failed to do so. Harding's long list of alleged errors, related to the Upstart account and as set forth in his arbitration complaint, were all roundly rejected, as presented in the award, with the arbitrator's finding that Harding had, in fact, "defaulted under the note" and "failed to cure the default," further concluding that Harding failed to adduce any evidence that would controvert Upstart's records. (Arb. Award at 1–2.) Any purported Upstart account inaccuracies were thus either expressly or necessarily decided by the arbitration award. And without a predicate inaccuracy, Harding has no viable FCRA claim against the Reporting Agencies as to the underlying Upstart account.

The Reporting Agencies additionally maintain that Harding should be precluded from relitigating, in this case, the very same damages he sought through the arbitration proceedings. (Jt. Mot. at 10–12.) Harding does not appear to dispute this point and, after review, the Court finds the Reporting Agencies' argument persuasive.

To start, the arbitrator concluded that Harding "provided no credible evidence of damages, actual or otherwise." (Arb. Award at 2.) In support, the arbitrator noted that "any evidence of financial harm" Harding submitted "was, at best, speculative." (*Id.*) Continuing, the arbitrator found that Harding also thoroughly failed to come forward with any "evidence to meet the high standard of willfulness imposed on a party suing to recover punitive damages." (*Id.*) The damages Harding sought through the arbitration all emanate from his complaints about the reporting of his Upstart-account delinquencies; the damages Harding seeks in this case, even against the Reporting Agencies, at bottom, are no different. (*E.g., compare* Pl.'s Arb. Compl. at 7 ¶ 31 (claiming "damages including, but not limited to higher interest rates, decreased credit limits on existing credit cards, denial in applications for new credit and higher credit limits, monies lost by attempting to fix credit such as communication costs and postage for disputes, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, stress associated with hundreds of

hours attempting to resolve this matter") (cleaned up) and 8 ¶ 40 (claiming damages of "loss of credit, damage to reputation, embarrassment, humiliation, [and] other mental and emotional distress") (cleaned up) *with* 4ᵗʰ Am. Compl. ¶ 51 (claiming "damages in the form of several credit application denials, lost business opportunities, reputational harm, emotional turmoil, mental stress, embarrassment, anxiety, humiliation, and feelings of hopelessness"). Accordingly, the Court agrees with the Reporting Agencies that the damages issue at stake in this litigation is effectively identical to the one that was at issue through the arbitration. As such, to the extent Harding continues to seek relief against the Reporting Agencies based on his claims that the Upstart delinquencies are inaccurate, his efforts are foreclosed on that basis as well.

**C. Harding's other claims, to the extent they are independent of the underlying Upstart reporting, are not violations under the FCRA.**

Through some of his claims against the Reporting Agencies, Harding attempts to draw a distinction between alleged inaccuracies in the way Upstart documents his account, on the one hand, and, on the other, separate mistakes the Reporting Agencies themselves allegedly made in re-reporting the account. To the extent some of these errors arise separately and apart from the Upstart account, the Reporting Agencies maintain, without any real resistance from Harding, that these purported mistakes are not actually actionable against them under the FCRA. The Court agrees.

First, much of Harding's theory of liability rests on the inconsistencies he perceives between Experian versus TransUnion's reports. For example, Harding argues that the two Reporting Agencies "reported two different fall[-]off dates which would cause the Upstart account to be on one of [his] credit reports longer than the other and possibly longer than the seven-year statutory limit." (Pl.'s Resp. to Jt. Mot. at 4.) Missing, however, is any concrete allegation that either Reporting Agency's reported fall-off date will result in the account's persisting in excess of the statutorily prescribed seven-year limit. Instead, Harding alleges only that TransUnion's report indicates an "estimated" fall-off date of July 2029, while Experian's report reflects that the account will stay "on record until" April 2029. At the same time, he says the date of first delinquency occurred in August 2022. (*E.g.*, 4ᵗʰ Am. Compl. ¶ 27.) Accordingly, it appears neither Reporting Agency has published any intention to maintain the Upstart account on record beyond the statutorily prescribed seven-year limitations period.

Further, as to Harding's complaint that neither Reporting Agency supplies a "date of first delinquency" ("DOFD"), he cites no legal authority indicating that a consumer reporting agency is required to do so. Instead, he identifies only a statutory requirement that a *furnisher* supply such information to a reporting

agency. (4th Am. Compl. ¶ 31 (citing 15 U.S.C. § 1681s-2(a)(5) for the proposition that a *furnisher* "who provides information about a delinquent account placed for collection or written off must also inform the [consumer reporting agency] when the delinquency commenced").) And the cases Harding relies on to support his position are not, in fact, to the contrary. For example, in *Beseke v. Equifax Info. Services LLC*, although the court criticized the defendant reporting agency's omission of a date of first delinquency, that was only because the omission resulted in the agency's re-aging the consumer's delinquent payments that would have otherwise fallen off the consumer's report. 420 F. Supp. 3d 885, 893 (D. Minn. 2019) (agreeing with a consumer that omitting the date of first delinquency while *also* reporting the derogatory history beyond the obsolescence period was misleading); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 869 (3d Cir. 2014) (addressing only a *furnisher's* obligation to provide dates of first delinquencies to a consumer reporting agency); *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 414 (4th Cir. 2001) (date of first delinquency not at issue). Ultimately, Harding fails to set forth a viable claim based on the Reporting Agencies' failure to supply a date of first delinquency. *See Gadson v. Experian Info. Sols., Inc.*, No. 2:23-CV-00029-BHH-MHC, 2024 WL 3745476, at *7 (D.S.C. July 18, 2024), *rep. & rec. adopted,* No. 2:23-CV-29-BHH, 2024 WL 3742464 (D.S.C. Aug. 9, 2024) ("To the extent [the consumer] is asserting that [the consumer reporting agency] should have identified on the consumer report the [date of first delinquency] for each account, [the consumer] has not pointed to any law requiring [the consumer reporting agency] to expressly include that information in the report, nor has she shown that its omission makes the report patently incorrect or misleading in such a way and to such an extent that it can be expected to have an adverse effect, particularly where the reported payment history is correct") (cleaned up).

Similarly, Harding cannot succeed under the FCRA based on his claims that the Reporting Agencies failed to include notices of dispute, compliance condition codes, or accurate report-update dates in their reports. Harding fails to supply any support, either legal or factual, for his theory that any of this information, or lack thereof, resulted in an inaccurate or materially misleading report that would be expected to have an adverse effect on him. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), *as revised* (May 24, 2016) (noting that "not all inaccuracies cause harm or present any material risk of harm"); *Diaz v. Equifax Info. Services, LLC*, No. 2:20-CV-437-JLB-MRM, 2021 WL 2814908, at *8 (M.D. Fla. Feb. 19, 2021) ("[A] failure to mark [an] account as disputed . . . without more does not state a viable claim.").

Finally, Harding's recitations of various purported inconsistencies within Experian's own records are also unavailing. Harding recites a limited series of

items that Experian reported in various "payment history charts" as compared to "balance histories." (4th Am. Compl. ¶¶ 39–44.) But all Harding has really alleged, at most, is that Experian's reporting of these isolated pieces of information is, at least to him, confusing and internally inconsistent. Harding's complaint ultimately leaves the Court guessing as to any specific factual inaccuracy or how the information he points to could be interpreted as derogatory. *See Riley v. Equifax Credit Info. Services*, 194 F. Supp. 2d 1239, 1248 (S.D. Ala. 2002) (concluding that "bald and conclusory allegation that [a] consumer report contained false data, without any other supporting evidence, is insufficient to show an inaccuracy"). Additionally, the data points he plucks from the report are devoid of context, precluding any inference that the report as a whole may have been inaccurate or misleading. *Cf. Lacey v. TransUnion, LLC*, No. 8:21-CV-519-02-JSS, 2021 WL 2917602, at *4 (M.D. Fla. July 12, 2021) ("[I]n determining whether a credit report is both true and unlikely to lead to misunderstanding, the report must be reviewed and considered in its entirety, instead of focusing on a single field of data.").

In sum, then, to the extent any of Harding's claims against the Reporting Agencies are based on issues not precluded by the Upstart arbitration award and confirmation, they are not actionable under the FCRA.

## 4. Conclusion

As explained above, Harding's claims against Upstart are wholly precluded by the previous arbitration and subsequent confirmation that resolved his complaints about his delinquent Upstart loan account. And, since his claims against the Reporting Agencies largely stem from those same issues, those claims are barred as well. To the extent, however, any of Harding's claims against the Reporting Agencies may arise from inaccuracies in their reports that are independent from the Upstart account itself, those claims fail to state any actual FCRA violations. Accordingly, the Court **grants** both Upstart's motion to dismiss, (**ECF No. 75**) as well as the Reporting Agencies' joint motion for judgment on the pleadings (**ECF No. 67**) and **dismisses** Harding's case against Upstart **with prejudice** and **grants judgment** in favor of the Reporting Agencies. Because the Court finds Harding's claims against Upstart barred by claim preclusion, it declines to evaluate Upstart's alternative request that the matter be compelled to arbitration.

Further, the Court **denies** Harding's motion for leave to file a *fifth* amended complaint. (**ECF No. 82**.) Harding has been afforded multiple chances to amend his pleadings and each time he has come up short. More importantly, the deadline to amend the pleadings has now long since passed and Harding supplies no good cause to support amending his complaint at this late date.

The Clerk is directed to **close** this case and any other pending motions are **denied as moot**. A separate judgment will follow.

**Done and ordered** in Miami, Florida, on November 18, 2024.

_____
Robert N. Scola, Jr.
United States District Judge